Carl Beckwith (CB9044)
BECKWITH & WOLF, LLP
1 Closter Commons #181
Closter, NJ 07624
Telephone: (201) 338-2833
Facsimile: (201) 839-4558
ccbeckwith@gmail.com

Eric S. Somers (*pro hac vice* forthcoming)
Howard Hirsch (*pro hac vice* forthcoming)
LEXINGTON LAW GROUP
1627 Irving Street
San Francisco, CA  94122
Telephone:  (415) 759-4111
Facsimile:  (415) 759-4112
esomers@lexlawgroup.com
hhirsch@lexlawgroup.com

Attorneys for Plaintiff Marlene Sway

Joseph P. Guglielmo(*pro hac vice* forthcoming)
Judith S. Scolnick (JS0829)
SCOTT+SCOTT LLP
500 Fifth Avenue, 40th Floor
New York, NY 10110
Telephone: (212) 223-6444
Facsimile: (212) 223-6334
jguglielmo@scott-scott.com
jscolnick@scott-scott.om

Christopher M. Burke (*pro hac vice* forthcoming)
SCOTT+SCOTT LLP
707 Broadway, Suite 1000
San Diego, CA 92101
Telephone: (619) 233-4565
Facsimile: (619) 233-0508
cburke@scott-scott.com

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARLENE SWAY, on behalf of herself and all others similarly situated, | Case No. |
| Plaintiff, | <u>CLASS ACTION</u> |
| vs. | **COMPLAINT**<br>**JURY TRIAL DEMANDED** |
| BENJAMIN MOORE & CO., a New Jersey corporation, | |
| Defendant. | |

Plaintiff Marlene Sway ("Plaintiff"), on behalf of herself and those similarly situated, based on information, belief and investigation of her counsel, except for information based on personal knowledge, hereby alleges:

## INTRODUCTION

1.      This Complaint seeks to remedy the unfair, deceptive, and unlawful business practices of defendant Benjamin Moore & Co. ("Defendant") with respect to the marketing and sales of certain defective batches of Natura interior waterborne paint (the "Product").[1] Defendant advertises the Product as "virtually odorless" and markets the Product as a great choice for those concerned about indoor air quality.  In fact, once applied, the Product emits a strong, foul, and persistent odor.

2.      Defendant further markets the Product as a quick-drying paint that "dries to the touch in 30 minutes."  In fact, once applied, the Product remains wet and sticky for months.

3.      Plaintiff and the other members of the Classes (as defined herein) purchased the Product in reliance on Defendant's false representations that the Product is odorless and quick-drying.  Plaintiff and the other members of the Classes would not have purchased the Product if they had known the Product would not be odorless or quick-drying as advertised, and that instead the Product would render the rooms in which the Product was used virtually uninhabitable.

4.      Plaintiff and the Classes seek an order enjoining Defendant's acts of unfair competition and other unlawful conduct, an award of damages to compensate them for

---

[1]   The Product includes, but is not limited to, the following batches of Natura paint: (a) 514-01 = 153722; (b) 514-1X = 1523823; (c) 514-1X = 162108; (d) 514-1X & K5141X = 172207; (e) 513-01 (all batch codes and all sizes); (f) 512-01 (earlier than batch 162005); (g) 512-1X (earlier than batch 142308); (h) 512-2X (earlier than batch 154631); (i) 512-3X (earlier than batch 143318); (j) 512-4X (earlier than batch 153217); (k) 513-1X (earlier than batch 134227); (l) 513-2X (earlier than batch 134025); (m) 513-3X (earlier than batch 143015); (n) 513-4X (earlier than batch 162005).

Defendant's acts of unfair competition, false and misleading advertising and breaches of warranty, and restitution to the individual victims of Defendant's unfair and deceptive practices.

## PARTIES

5.     Plaintiff Marlene Sway ("Plaintiff") is a resident of California.   In or about August 2009, Plaintiff purchased the Product to paint several rooms in her home.   Plaintiff is concerned about indoor air quality.   Therefore, Plaintiff selected the Product to paint her home in reliance upon Defendant's representations that the Product is odorless, quick-drying and a superior choice for those concerned about indoor air quality.   Had Plaintiff known that the Product emits a strong, foul and long lasting odor and does not dry for months or longer, Plaintiff would not have purchased the Product.

6.     Defendant Benjamin Moore & Co. is a New Jersey corporation with its principal place of business in Montvale, New Jersey.   Defendant distributes and sells the Product in New Jersey, California and throughout the United States.

## JURISDICTION AND VENUE

7.     The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d)(2).   Plaintiff seeks certification of a nationwide class of all persons who purchased the Product during the applicable statute of limitations, as well as several statewide subclasses of persons who purchased the Product during the applicable statute of limitations.   Defendant is a citizen of New Jersey.   The amount in controversy, exclusive of interest and costs, exceeds $5 million.

8.     The Court has personal jurisdiction over Defendant because it is a corporation that has sufficient minimum contacts in New Jersey, or otherwise intentionally avails itself of the New Jersey market through its marketing, manufacturing and/or sales of the Product in the State

of New Jersey, and/or by having such other contacts with New Jersey so as to render the exercise

of jurisdiction over it by the New Jersey courts consistent with traditional notions of fair play and

substantial justice.

9.      Venue is proper pursuant to 28 U.S.C. § 1391(a) because the Defendant resides in

this District and a substantial part of the events or omissions giving rise to the claim occurred in

this District.  See affidavit of Eric Somers, attached as Exhibit 1.

## BACKGROUND FACTS

10.      Defendant advertises the Product as a zero-VOC ("Volatile Organic Compound")

paint that is "virtually odorless."  According to the Environmental Protection Agency's website:

> Volatile organic compounds (VOCs) are emitted as gases from certain solids or liquids.
> VOCs include a variety of chemicals, some of which may have short- and long-term
> adverse health effects. Concentrations of many VOCs are consistently higher indoors (up
> to ten times higher) than outdoors. VOCs are emitted by a wide array of products
> numbering in the thousands. Examples include: paints and lacquers, paint strippers,
> cleaning supplies, pesticides, building materials and furnishings, office equipment such
> as copiers and printers, correction fluids and carbonless copy paper, graphics and craft
> materials including glues and adhesives, permanent markers, and photographic solutions.
> (http://www.epa.gov/iaq/voc.html last accessed April 25, 2011)

Defendant's marketing of the Product targets consumers, such as parents of young children and

others who are particularly concerned about environmental issues in general and indoor air

quality in particular.  Even the name of the Product – "Natura" – was apparently chosen because

Defendant advertises the Product as "inspired by nature."

11.      Defendant's marketing of the Product prominently features two key features of

the Product that, according to Defendant, distinguish the Product from other paints offered by

Defendant and its competitors: (a) zero-VOC; and (b) odorless.   Defendant considers the

odorless feature of the Product to be such a material aspect of the Product's performance that

virtually all of Defendant's advertising of the Product includes a representation that the Product

is odorless.  For example, Defendant lists "virtually odorless" as the very first listed "Feature" of the Product on Defendant's web site.

12.     Defendant also markets the Product as a quick-drying paint that "dries to the touch in 30 minutes" and "can be recoated in one-two hours."  Because the Product is advertised as odorless and quick-drying, Defendant boasts in its uniform marketing materials that "you can paint in the morning and have full use of the room by evening."

13.     In marketing the Product, Defendant has made uniform representations that the Product is "odorless" and "dries to the touch in 30 minutes" on Defendant's web site, on the web sites of third party retailers, on the Product's packaging, on brochures distributed with the Product, in print publications, on in-store displays and in other forms of marketing and advertising.   For example, the Product's packaging includes the following uniform and prominent representations regarding the Product:

       a.    "***Virtually No Odor***"

       b.    "Breathe Easy"

       c.    "Dries to the touch: 30 minutes.  Recoat after 1-2 hours"

14.     Defendant also includes an "Application Guide" that is affixed to the Product that includes the following uniform and prominent representations:

       a.    "***Virtually No Odor***"

       b.    "Natura®, the right choice for you and your family"

       c.    "Unlike most environmentally friendly paints, there are no compromises with Natura® paint.  It covers easily, [and] is ***virtually odorless*** …"

       d.    "Allow the first coat to dry completely (approximately one hour) before applying a second coat – if necessary."

15.     Other uniform and widely distributed representations that Defendant has made in its marketing materials regarding the Product include, but are not limited to:

a.     "Benjamin Moore realizes it's the small choices in life that have the greatest impact on our families.  That's why we developed Benjamin Moore Natura.  Inspired by nature, Natura is a zero-VOC, *virtually odorless* paint that doesn't sacrifice on design or the environment."

b.     "Best of all, Natura is *virtually odorless*, so your family can enjoy the room the same day."

c.     "*Virtually odorless*: A specialized refining process removes most odors from the resin system of the paint, which is part of Benjamin Moore's commitment to research and development to provide the most environmentally friendly paints."

d.     "Natura® premium interior waterborne paint is a zero VOC, *virtually odorless* formula that doesn't compromise on performance."

e.     "New, greener raw materials combined together with a special refining process to remove odors has produced a product that is *virtually odorless*."

f.     "A *virtually odorless* finish in an unlimited color palette for every interior surface"

g.     "*Virtually odorless*"

l.     "Natura interior paint has zero VOCs and is *virtually odorless* without sacrificing style or performance."

m.  "Unlike conventional zero-VOC paints, Natura remains zero-VOC even after tinting, which means it remains **_virtually odorless_** regardless of color."

n.  "Your family will breathe easy with Natura."

o.  "Natura paint from Benjamin Moore is **_virtually odorless_** - and available in ANY color."

p.  "Natura interior waterborne paint provides a durable, washable, and fade-resistant finish that will look freshly painted year after year.  It goes on smoothly and covers evenly for professional results with less effort, cleans up easily, **_dries to the touch in 30 minutes_**, and can be recoated in one to two hours, so you can paint in the morning and have the full use of the room by evening."

q.  "Natura® Interior Waterborne Paint – Change your environment"

r.  "Recycling, buying organic, using energy-efficient products – these are just a few of the choices you make every day to help the environment. With Natura paint, you have an environmentally friendly option when it comes to painting the interior of your home, and you can count on the beauty and quality you expect from Benjamin Moore."

s.  "Natura® premium interior waterborne paint, the natural choice in environmentally friendly paints"

t.  "Benjamin Moore has painstakingly evaluated more environmentally friendly raw materials for the formulation of this paint."

u.  "**_Fast-drying_** and washable"

6

   v.  "***Fast drying***.  Dries to the touch in 30 minutes, recoat in one to two hours."

   w.  "***Dries fast*** and is ***virtually odorless*** for same-day return-to-service."

16. Defendant specifically advertises the Product as being a good choice for parents concerned about indoor air quality in nurseries or toddler bedrooms.  For example, Defendant's web site proclaims, "We also have the best paint for your little one's room.  Premium Natura® paint is ***virtually odorless***, contains no VOCs even after tinting, and is available in more than 3,000 colors." [2]  Defendant's web site includes an "Interior Paint Chooser" that also specifically recommends the Product for children's bedrooms: "Since you are painting a children's bedroom we recommend Natura.  Natura is the greenest paint available."

17. All of Defendant's labeling and advertising for the Product also includes Defendant's trademarked "green promise" logo.  According to Defendant's advertising: "The Green Promise designation is Benjamin Moore's assurance that its environmentally friendly coatings meet and often exceed the strictest industry standards, while also delivering the premium level of performance you expect from Benjamin Moore."  Defendant also advertises that "Natura features our Green Promise designation, so you can breathe easy knowing that you've used the very best for your environmentally sensitive projects."

18. As illustrated by the examples above, Defendant's marketing of the Product communicates one consistent theme: if a consumer is concerned about indoor air quality, the Product is the best choice since it is odorless, zero-VOC, and dries quickly.

---

[2] Benjamin Moore,
http://www.benjaminmoore.com/bmpsweb/portals/bmps.portal;jsessionid=CC0tMS1XJ9g2b
0ynjGhw2Jv2PMjhtyx01vkwQn9t1SshHnR21TCr!209424516?_nfpb=true&_windowLabel=
contentrenderer_1_1&contentrenderer_1_1_actionOverride=%2Fbm%2Fcms%2FContentRe
nderer%2FrenderContent&contentrenderer_1_1NodeUUID=%2FBEA+Repository%2F81140
27&_pageLabel=fh_getinspired  (last accessed April 22, 2011)

19.     Defendant charges more for the Product than for other comparable paints sold by Defendant and other paint companies.  Plaintiff and the other members of the Classes purchased the Product, and were willing to pay more for the Product than for comparable paints, in reliance on Defendant's representations that the Product is odorless, dries quickly and is a good choice for those concerned about indoor air quality.

20.     Defendant's representations that the Product is odorless and dries quickly are false.  To the contrary, once applied, the Product emits an offensive, acute and enduring odor and remains wet and sticky for months.  Had Plaintiff and the other members of the Class known that the Product was not odorless and quick-drying as represented by Defendant, they would not have purchased the Product and certainly would not have paid more for the Product than for comparable paints.  In fact, even absent Defendant's misrepresentations that the Product is odorless and dries quickly, no reasonable consumer would purchase the Product if he or she knew that it emits an offensive, acute and enduring odor and that the Product does not dry completely even months after it is applied.

21.     Defendant is aware that the Product is not odorless and quick-drying as advertised, yet Defendant has not undertaken any effort to notify its end use customers of the problem, let alone to remedy the harm those customers are suffering as a result of the problem.  Defendant's failure to disclose the problems with the Product is an omission of facts that are material to Plaintiff and the other members of the Class.

22.     On or about July 22, 2010, Defendant issued a "Product Replacement" notice to retail outlets that sell the Product.  Although Defendant knew at the time that the Product did not perform as advertised, Defendant did not inform its retail outlets of that fact.  Instead, the "Product Replacement" notice stated: "Since the introduction of Natura two years ago, we have

made additional changes to further improve its performance.  To this [sic], Benjamin Moore & Co. will replace the older version products, skus and batches."  The notice went on to instruct retail outlets to check for certain batch codes, and to contact Defendant to make arrangements to have those batches "exchanged."  Defendant concluded the notice by stating: "While I know this is an inconvenience, this is an opportunity to replace your older stock with new." [3]  Because Defendant crafted the notice to omit any reference to any problem with the Product, a retailer receiving the notice may or may not have accepted Defendant's invitation to replace the older, defective Product with replacement product.  Furthermore, Defendant did not seek any information from its retailers about customers who had already purchased the Product, nor did Defendant instruct its retailers to make any effort to contact those customers to inform them of the problem or to remedy the harm those customers were suffering as a result of the problem.  Defendant did not issue a consumer recall of the Product nor did Defendant take any steps at all to notify consumers of the problems with the Product.

23.     Defendant's Product Replacement notice to retailers was also deficient as it did not include all of the batches of the Product that are defective.  Therefore, to the extent retailers accepted Defendant's invitation to replace the older, defective Product with replacement product, there were additional batches of defective Product that such retailers were not allowed to replace.  Thus, even retailers who replaced the Product that was identified in the Product Replacement notice continued selling defective Product to consumers, and Defendant failed to ensure that the Product was not still being sold to unsuspecting consumers.

24.     Many consumers have complained to Defendant and in online postings about the problems with the Product.  Following are some samples of online complaints:

a.   "You are lucky you only painted one room.  We painted the entire house

_____

[3]     Benjamin Moore, Product Replacement Memo, dated July 22, 2010 (attached as Exh. 2).

almost a year ago, and it is still out gassing.  The first few months it smelled of rotting fish, now it is less strong and has a chemical smell to it.  To this day, I still exchange the air in the house with strong fans every morning for several hours.  I can't get Benjamin Moore to answer my calls."

b.  "I too have been having bad smell.  It's been two weeks now and it's still there.  I have been airing out the room with a fan and still no progress.  A Benjamin Moore representative came to my home and acknowledged that the room smelled 'earthy'."

c.  "I also have a bad chemical paint smell from Benjamin Moore Natura paint.  I painted my ceiling 6 weeks ago, and I still have to keep my bedroom window open 24/7.  After the first coat smelled 'bad' I waited a week and went to BM to ask why it smelled.   The man behind the counter said there were no complaints or problems, and I was probably imagining it.  Foolishly, I painted a second coat.  How long before the smell goes away?"

d.  "Oh wow, I wish I had seen these reviews.  These people are not kooks -- I'm a 9 month pregnant mom and also thought this would be the safe option for the nursery.   The smell is much, much stronger than Aura, which I've previously used and loved.  Natura is not 'virtually odorless' at all, but smells exactly like regular paint.  Since having the room painted, we've had to keep its windows open (not convenient -- we live in a ranch and it's cold in Ohio) and a towel under the door, but whole house still smells like wet paint.  It's nauseating.  I'm panicked because we have nowhere else to put the baby or his things.  This is the last thing we need to worry about right now!  Shame on

you Benjamin Moore!!"

e.   "Help.  Painted two weeks ago with Benjamin Moore's Natura, 'greenest' paint.  No VOC. Two weeks after painting, the smell has not gone away.  Still a paint smell.  I fear I am stuck with this smell."

f.   "Coincidentally my Ben Moore rep was in today and gave me a list of Natura batches that are being recalled for exactly the reason you mentioned.  They do claim the smell will eventually go away, however, this certainly should not happen.  Go see your Ben Moore store and let them know what the problem is.  If they are unaware of the recall ask them to call up Ben Moore and get the info."

g.   "The bad smell from Benjamin Moore Natura Paint has still not gone away, even 6 weeks after painting.  I have read on other sites about this problem that the smell is still there a year later.  One man ripped out his ceiling and put in new drywall to get rid of the smell.   I have no idea what to do--I am considering sanding off the paint, but am afraid of inhaling the gasses and small particles, even with a dust mask.  Any suggestions?"

### CLASS ACTION ALLEGATIONS

25.   Plaintiff brings this suit individually and as a class action pursuant to Federal Rule of Civil Procedure 23, on behalf of herself and the class defined as follows: all persons in the United States who purchased the Product (either directly or through an agent) during the applicable statute of limitations (the "Class").   Specifically excluded from the Class are Defendant; the officers, directors or employees of Defendant; any entity in which Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of Defendant.   Also

excluded are any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

26.    Plaintiff also brings this suit as a class action pursuant to Federal Rule of Civil Procedure 23, on behalf of herself and a subclass defined as follows: all persons who purchased the Product in the United States in any state other than Louisiana (either directly or through an agent) during the applicable statute of limitations (the "Warranty Subclass").   Specifically excluded from the Warranty Subclass are Defendant; the officers, directors or employees of Defendant; any entity in which Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of Defendant.  Also excluded are any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

27.    Plaintiff also brings this suit as a class action pursuant to Federal Rule of Civil Procedure 23, on behalf of herself and a subclass defined as follows: all persons who purchased the Product in California (either directly or through an agent) during the applicable statute of limitations (the "California Subclass").  Specifically excluded from the California Subclass are Defendant; the officers, directors or employees of Defendant; any entity in which Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of Defendant.  Also excluded are any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

28.    Plaintiff also brings this suit as a class action pursuant to Federal Rule of Civil Procedure 23, on behalf of herself and a subclass defined as follows: all persons who purchased the Product for personal, family or household purposes in California (either directly or through an agent) during the applicable statute of limitations (the "CLRA Subclass").   Specifically

excluded from the CLRA Subclass are Defendant; the officers, directors or employees of Defendant; any entity in which Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of Defendant.  Also excluded are any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

29.     The Class, and the Warranty Class, the California Subclass and CLRA Subclass (collectively "Subclasses") are sufficiently numerous, as each includes hundreds or thousands of persons who have purchased the Product.  Thus, joinder of such persons in a single action or bringing all members of the Class or the Subclasses before the Court is impracticable for purposes of Rule 23(a)(1) of the Federal Rules of Civil Procedure.  The disposition of the Class members' and Subclass members' claims in this class action will substantially benefit both the parties and the Court.  The members of the Class and Subclasses are readily ascertainable from Defendant's records, the records of Defendant's retailers, and other appropriate discovery.

30.     There are questions of law and fact common to the Class and Subclasses for purposes of Federal Rule of Civil Procedure 23(a)(2).  Defendant utilizes advertisements and packaging that include uniform representations concerning qualities of the Product that are false and misleading.  These representations misled Plaintiff and the other members of the Class and Subclasses, and Defendant breached uniform warranties that were made to Plaintiff and the other members of the Class and Subclasses.  Thus, there is a well-defined community of interest in the questions of law and fact involved in this action and affecting the parties.

31.     Plaintiff asserts claims that are typical of the claims of the entire Class and Subclasses for purposes of Federal Rule of Civil Procedure 23(a)(3).  Plaintiff and all Class and

Subclass members have been subjected to the same wrongful conduct because they have purchased the Product, which does not perform in the manner that Defendant represents.

32.     Plaintiff will fairly and adequately represent and protect the interests of the other Class and Subclass members for purposes of Federal Rule of Civil Procedure 23(a)(4).  Plaintiff has no interests antagonistic to those of other Class and Subclass members.  Plaintiff is committed to the vigorous prosecution of this action and has retained counsel experienced in litigation of this nature to represent her.  Plaintiff anticipates no difficulty in the management of this litigation as a class action.

33.     Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(2) because Defendant has acted on grounds that apply generally to the Class and Subclasses, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class and Subclasses as a whole.  Defendant utilizes advertising campaigns that include uniform misrepresentations that misled Plaintiff and the other members of the Class and Subclasses. Plaintiff seeks to enjoin Defendant's misrepresentations, injunctive relief that will benefit her, the Class and future purchasers of the Product.

34.     Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact substantially predominate over any questions that may effect only individual members of the Class and Subclasses.   Among these common questions of law and fact are:

> a.     whether Defendant advertises and markets the Product by representing that the Product is odorless and quick-drying;
>
> b.     whether, contrary to Defendant's representations in the Product's advertising and labeling, the Product emits a strong odor and does not dry

14

quickly;

c.    whether Defendant's marketing and advertising that the Product is odorless, quick-drying and a good choice for consumers concerned about indoor air quality is likely to deceive the Class and Subclasses;

d.    whether Defendant's failure to disclose that the Product is defective constitutes a material omission;

e.    whether Defendant's conduct is unethical, oppressive, unscrupulous, and/or substantially injurious to consumers;

f.    whether Defendant's conduct results in aggregate loss by the Class and Subclasses in excess of $5 million;

g.    whether Defendant's conduct in advertising and marketing the Product constitutes a violation of state consumer protection law;

h.    whether Defendant's representations concerning the Product constitute express warranties with regard to the Product;

i.    whether Defendant breached the express warranties it has made with regard to the Product;

j.    whether Defendant breached implied warranties with regard to the Product; and

k.    whether Plaintiff and the Class and Subclass members are entitled to injunctive and other equitable relief and to monetary relief.

35.    Proceeding as a class action provides substantial benefits to both the parties and the Court because this is the most efficient method for the fair and efficient adjudication of the controversy.  Class and Subclass members have suffered and will suffer irreparable harm and

damages as a result of Defendant's wrongful conduct.  Because of the nature of the individual Class and Subclass members' claims, few, if any, could or would otherwise afford to seek legal redress against Defendant for the wrongs complained of herein, and a representative class action is therefore appropriate, the superior method of proceeding and essential to the interests of justice insofar as the resolution of Class and Subclass members' claims is concerned.  Absent a representative class action, Class and Subclass members would continue to suffer losses for which they would have no remedy, and Defendant would unjustly retain the proceeds of their ill-gotten gains.  Even if separate actions could be brought by individual members of the Class and Subclass, the resulting multiplicity of lawsuits would cause undue hardship, burden and expense for the Court and the litigants, as well as create a risk of inconsistent rulings which might be dispositive of the interests of the other Class and Subclass members who are not parties to the adjudications and/or may substantially impede their ability to protect their interests.

36.     On behalf of the Class and Subclasses, Plaintiff seeks declaratory relief, injunctive relief and economic damages resulting from Defendant's false advertising and breaches of warranty.  Plaintiff is not seeking the recovery of damages for personal injuries arising out of Defendant's conduct.  Any notice to the Class and Subclasses can inform those individuals of this limitation, and any Class and Subclass members who wish to pursue claims for personal injury can opt out of this action.

**FIRST CAUSE OF ACTION**
**(Plaintiff, On Behalf of Herself and the Class, Alleges Violations**
**of the New Jersey Consumer Fraud Act N.J.S.A. §§ 56:8-1 *et seq*.)**

37.     Plaintiff realleges and incorporates herein by reference paragraphs 1 through 36 of this Complaint.

38.     Defendant is and has been a corporate citizen of the state of New Jersey throughout the relevant time period.  Defendant conducts a significant amount of trade and commerce in New Jersey.  Upon information and belief, the acts and practices at issue in this litigation – including Defendant's design, manufacture, advertising and marketing of the Product – took place in and emanated from New Jersey.  New Jersey has a substantial governmental interest in ensuring that its corporate citizens behave in such a manner as to comply with its laws, including the New Jersey Consumer Fraud Act ("NJCFA").

39.     The Product is "merchandise" within the meaning of NJCFA, N.J.S.A. § 56:8-1(c).

40.     Defendant is a "person" within the meaning of NJCFA, N.J.S.A. § 56:8-1(d).

41.     At all times relevant herein, the NJCFA was in effect.  The Act prohibits any "fraud, false pretense, false promise, [or] misrepresentation . . . in connection with the sale or advertisement of any merchandise."  N.J.S.A. §45:8-2.

42.     Further, the NJCFA prohibits any "knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission in connection with the sale or advertisement of any merchandise."  N.J.S.A. §45:8-2.

43.     Defendant has engaged and continues to engage in conduct that violates the NJCFA, N.J.S.A § 56:8-1 *et seq*.  This conduct includes, but is not limited to, promoting and advertising that the Product is odorless and quick-drying when, in fact, the Product emits an offensive, acute and enduring odor and the Product does not dry even months after it is applied. It further includes Defendant's failure to disclose the problems with the Product to consumers or retailers selling the Product.

44.     The Product's odorless and quick-drying features are important and material factors to Plaintiff and the Class.  Even absent Defendant's misrepresentations that the Product is odorless and quick-drying, no reasonable consumer would purchase the Product if he or she knew that it emits an offensive, acute and enduring odor and that the Product does not dry completely even months after it has been applied.   Defendant's unconscionable conduct described herein included the omission and concealment regarding the Product's defects in its advertising and marketing.

45.     Defendant had knowledge that the Product failed to perform as advertised and instead emitted an offensive, acute and enduring odor and failed to dry in a reasonable period of time.

46.     Plaintiff and the Class were not aware of the Product's defects at the time of purchase.  Defendant intended that Plaintiff and the Class rely on Defendant's acts and omissions so that Plaintiff and the other Class members would purchase the Product.

47.     Plaintiff and the Class have all paid money for the Product.  Had Plaintiff and the other members of the Class known that the Product was not odorless and quick-drying as represented by Defendant, they would not have purchased the Product and certainly would not have paid more for the Product than for comparable paints.  Plaintiff and the Class have also suffered other damages, including but not limited to costs incurred trying to eliminate the offensive odor and damp, sticky interior surfaces created by the Product.

48.     Defendant's conduct constitutes a violation of the NJCFA.  Plaintiff and the Class have suffered an ascertainable loss of moneys and pursuant to N.J.S.A. § 56:8-19 are entitled to actual damages, threefold damages, injunctive relief and attorneys' fees and costs.

Wherefore, Plaintiff prays judgment against Defendant, as set forth hereafter.

## SECOND CAUSE OF ACTION
**(Plaintiff, On Behalf of Herself and the Warranty Subclass, Alleges Breach of Express Warranty)**

49.     Plaintiff realleges and incorporates herein by reference Paragraphs 1 through 48 of this Complaint.

50.     The Uniform Commercial Code § 2-313 provides that an affirmation of fact or promise made by the seller to the buyer which relates to the good and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the promise.

51.     As detailed above, Defendants marketed and sold the Product as odorless and quick-drying and specifically represented on the packaging of the Product that the Product is odorless and quick-drying.  Defendant's representations that the Product is odorless and quick-drying constitute affirmations of fact made with regard to the Product as well as descriptions of the Product.

52.     Defendant's representations regarding the Product being odorless and quick-drying are made in the Product brochures, on the Product packaging, Product advertising and Product promotions and are thus part of the basis of the bargain between Defendant and purchasers of the Product.

53.     At all times, New Jersey (N.J. Stat. Ann. § 12A:2-313) and every state except Louisiana, including the District of Columbia, have codified and adopted the provisions of the Uniform Commercial Code governing the express warranty of merchantability, as set forth below: Ala. Code 1975 § 7-2-313; Alaska Stat. § 45.02.313; Ariz. Rev. Stat. § 47-2313; Ark. Stat. § 4-2-313; Cal. Com. Code § 2313; Colo. Rev. Stat. Ann. § 4-2-313; Conn. Gen. Stat. Ann. § 42a-2-313; 6 Del. C. § 2-313; D.C. Stat. § 28:2-313; Fla. Stat. Ann. § 672.313; Ga. Code Ann. § 11-2-313; Haw. Rev. Stat. § 490:2-313; Idaho Code § 28-2-313; 810 Ill. Comp. Stat. Ann. 5/2-

313; Ind. Code Ann. § 26-1-2-313; Iowa Code Ann. § 554.2313; Kan. Stat. Ann. § 84-2-313; Ky. Rev. Stat. Ann. § 355.2-313; 11 Me. Rev. Stat. Ann. § 2-313; Md. Code Ann. § 2-313; Mass. Gen. Laws. Ch. 106 § 2-313; Mich. Comp. Laws Ann. § 440.2.313; Minn. Stat. Ann. § 336.2-313; Miss. Code Ann. § 75-2-313; Mo. Rev. Stat. § 400.2-313; Mont. Code Ann. § 30-2-313; Neb. Rev. Stat. U.C.C. § 2-313; Nev. Rev. Stat. U.C.C § 104.2313; N.H. Rev. Ann. § 382-A:2-313; N.M. Stat. Ann. § 55-2-313; N.Y. U.C.C. Law 2-313; N.C. Gen. Stat. Ann. § 25-2-313; N.D. Stat. § 41-02-313; Ohio Rev. Code Ann. § 1302.26; Okla. Stat. tit. 12A § 2-313; Or. Rev. Stat. § 72.3130; 13 Pa. Stat. Ann. § 2313; R.I. Gen. Laws § 6A-2-313; S.C. Code Ann. § 36-2-313; S.D. Stat. § 57A-2-313; Tenn. Code Ann. § 47-2-313; Tex. Bus. & Com. Code Ann. § 2-313; Utah Code Ann. §70A-2-313; Va. Code § 8.2-313; Vt. Stat. Ann. 9A § 2-313; Rev. Code Wash. Ann. § 62A.2-313; W. Va. Code § 46-2-313; Wis. Stat. Ann § 402.313; Wyo. Stat. § 34.1-2-313.

54.     At the time that Defendant designed, manufactured, sold and/or distributed the Product, Defendant knew the purpose for which the Product was intended and expressly warranted that the Product was odorless, quick-drying and a superior choice for those concerned about indoor air quality.

55.     Plaintiff and other members of the Warranty Subclass relied upon the skill, superior knowledge and judgment of Defendant to sell a Product that was odorless, quick-drying and a superior choice for those concerned about indoor air quality.

56.     As set forth in the paragraphs above, the Product did not conform to Defendant's express representations.   Defendant has thus breached its express warranties concerning the Product.

57.    Because Defendant issued the Product Replacement notice, and because consumers have complained to Defendant about the Product, Defendant has actual knowledge that the Product is not odorless and quick-drying, that the Product is not a superior choice for those concerned about indoor air quality and that the Product was not fit for its ordinary purpose. Plaintiff was therefore not required to notify Defendant of its breach.  If notice is required, Plaintiff and the Warranty Subclass have adequately provided Defendant of such notice through the filing of this lawsuit and sending a pre-suit demand letter to Defendant.

58.    As a direct and proximate result of Defendant's breach of express warranties, Plaintiff and other members of the Warranty Subclass have suffered damages.

Wherefore, Plaintiff prays for judgment against Defendant, as set forth hereafter.

### THIRD CAUSE OF ACTION
**(Plaintiff, On Behalf of Herself and the Warranty Subclass, Alleges Breach of Implied Warranty)**

59.    Plaintiff realleges and incorporates herein by reference Paragraphs 1 through 58 of this Complaint.

60.    The Uniform Commercial Code § 2-314 provides that unless excluded or modified, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.

61.    Defendant manufactured, marketed and sold the Product and represented that the Product was odorless, quick-drying and a superior choice for those concerned about indoor air quality.  Contrary to such representations, Defendant failed to disclose that the Product is defective as it emits a strong, foul, and persistent odor and fails to dry completely even months after it is applied.

62.     At all times, New Jersey (N.J. Stat. Ann. § 12A:2-314) and every state except Louisiana, including the District of Columbia, have codified and adopted the provisions of the Uniform Commercial Code governing the implied warranty of merchantability, as set forth below : Ala. Code § 7-2-314; Alaska Stat. § 45.02.314; Ariz. Rev. Stat. Ann. § 47-2314; Ark. Code Ann. § 4-2-314; Cal. Com. Code § 2314; Colo. Rev. St § 4-2-314; Conn. Gen. Stat. Ann. § 42a-2-314; 6 Del. C. § 2-314; D.C. Code § 28:2-314; Fla. Stat. Ann. § 672.314; Ga. Code Ann. § 11-2-314; Haw. Rev. Stat. § 490:2-314; Idaho Code § 28-2-314; 810 Ill. Comp. Stat. Ann. 5/2-314; Ind. Code Ann. § 26-1-2-314; Iowa Code Ann. § 554.2314; Kan. Stat. Ann. § 84-2-314; Ky. Rev. Stat. Ann. § 355.2-314; La. Civ. Code Ann. art. § 2520; 11 Me. Rev. Stat. Ann. § 2-314; Md. Code Ann. § 2-314; Mass. Gen. Laws Ch. 106 § 2-314; Mich. Comp. Laws Ann. § 440.2314; Minn. Stat. Ann. § 336.2-314; Miss. Code Ann. § 75-2-314; Mo. Rev. Stat. § 400.2-314; Mont. Code Ann. § 30-2-314; Neb. Rev. Stat. U.C.C. § 2-314; Nev. Rev. Stat. U.C.C § 104.2314; N.H. Rev. Ann. § 382-A:2-314; N.M. Stat. Ann. § 55-2-314; N.Y. U.C.C. Law §2-314; N.C. Gen. Stat. Ann. § 25-2-314; N.D. Stat § 41-02-314; Ohio Rev. Code Ann. § 1302.27; Okla. Stat. tit. 12A § 2-314; Or. Rev. Stat. § 72.3140; 13 Pa. Stat. Ann. § 2314; R.I. Gen. Laws § 6A-2-314; S.C. Code Ann. § 36-2-314; S.D. Stat. § 57A-2-314; Tenn. Code Ann. § 47-2-314; Tex. Bus. & Com. Code Ann. § 2-314; Utah Code Ann. § 70A-2-314; Va. Code § 8.2-314; Vt. Stat. Ann. 9A § 2-314; W. Va. Code § 46-2-314; Wash. Rev. Code § 62A 2-314; Wis. Stat. Ann. § 402.314 and Wyo. Stat. § 34.1-2-314.

63.     As a designer, manufacturer, producer, marketer and seller of the Product, Defendant is a "merchant" within the meaning of the various states' commercial codes governing the implied warranty of merchantability.

64.     The Product is a "good" as defined in the various states' commercial codes governing the implied warranty of merchantability.

65.     As a merchant of the Product, Defendant knew that purchasers relied upon it to design, manufacture and sell a paint that was odorless, was a superior choice for those concerned about indoor air quality, dried within a reasonable amount of time from when it was applied and did not render the rooms in which it was applied uninhabitable.

66.     Defendant designed, manufactured and sold the Product to parents of young children and knew that the Product would be applied in the nurseries, bedrooms, playrooms and other spaces in which young children spend most of their time indoors.

67.     Defendant specifically represented in its marketing and advertising that the Product was odorless, quick-drying, a superior choice for those concerned about indoor air quality and a particularly good choice for nurseries, bedrooms, playrooms and other spaces in which young children spend most of their time indoors.

68.     At the time that Defendant designed, manufactured, sold and/or distributed the Product, Defendant knew the purpose for which the Product was intended and implicitly warranted that the Product was of merchantable quality; was free of manufacturing defects; was free of design defects; and was safe and fit for its ordinary purpose – as an interior paint that is odorless, is a superior choice for those concerned about indoor air quality and for rooms occupied by young children, will dry within a reasonable amount of time from when it was applied and does not render the rooms in which it is applied uninhabitable.

69.     Defendant breached its implied warranties in connection with its sale of the Product to Plaintiff and members of the Warranty Subclass.  The Product was not fit for its ordinary purposes and intended use, and was not free of defects.

70.    Because Defendant issued the Product Replacement notice, and because consumers have complained to Defendant about the Product, Defendant has actual knowledge that the Product is not odorless nor quick-drying, is not a superior choice for those concerned about indoor air quality and was not fit for its ordinary purpose.  Plaintiff was therefore not required to notify Defendant of its breach.  If notice is required, Plaintiff and the Warranty Subclass have adequately provided Defendant of such notice through the filing of this lawsuit and sending a pre-suit demand letter to Defendant.

71.    As a direct and proximate result of Defendant's breach of implied warranties, Plaintiffs and other members of the Warranty Subclass have been injured and have suffered damages.

### FOURTH CAUSE OF ACTION
**(Plaintiff, On Behalf Of Herself and the CLRA Subclass, Alleges Violations of the California Consumers Legal Remedies Act – Injunctive Relief)**

72.    Plaintiff realleges and incorporates herein by reference Paragraphs 1 through 71 of this Complaint.

73.    Plaintiff and the CLRA Subclass members purchased the Product

74.    The acts and practices of Defendant as described above were intended to deceive Plaintiff and the CLRA Subclass members as described herein and have resulted and will result in damages to Plaintiff and the California Subclass members.  These actions violated and continue to violate California's Consumers Legal Remedies Act ("CLRA") in at least the following respects:

a.     In violation of Section 1770(a)(5) of the CLRA, Defendant's acts and practices constitute representations that the Product has characteristics, uses and/or benefits which it does not;

b.     In violation of Section 1770(a)(7) of the CLRA, Defendant's acts and practices constitute representations that the Product is of a particular quality which it is not; and

c.     In violation of Section 1770(a)(9) of the Act, Defendant's acts and practices constitute the advertisement of the Product without the intent to sell it as advertised.

75.     By reason of the foregoing, Plaintiff and the California Subclass members have suffered damages.

76.     By committing the acts alleged above, Defendant violated the CLRA.

77.     In compliance with the provisions of California Civil Code § 1782, Plaintiff has provided written notice to Defendant of her intention to seek damages under California Civil Code § 1750, *et seq.*, and has requested that Defendant offer an appropriate consideration or other remedy to all affected consumers.   Plaintiff intends to amend the Complaint to seek damages should Defendant fail to remedy its conduct in accordance with Plaintiff's demand.

78.     Plaintiff and the CLRA Subclass members are entitled to, pursuant to California Civil Code § 1780(1)(2), an order enjoining the above-described wrongful acts and practices of Defendant, providing restitution to Plaintiff and the CLRA Subclass members and ordering the payment of costs and attorneys' fees and any other relief deemed appropriate and proper by the Court under California Civil Code § 1780.

Wherefore, Plaintiff prays for judgment against Defendant, as set forth hereafter.

**FIFTH CAUSE OF ACTION**
**(Plaintiff, On Behalf of Herself, the California Subclass, and the General Public,**
**Alleges Violations of California Business & Professions Code § 17200,**
***et seq*. Based On Fraudulent Acts And Practices)**

79.     Plaintiff realleges and incorporates herein by reference Paragraphs 1 through 79 of this Complaint.

80.     Under Business & Professions Code § 17200, any business act or practice that is likely to deceive members of the public constitutes a fraudulent business act or practice.

81.     Defendant has engaged and continues to engage in conduct that is likely to deceive members of the public.  This conduct includes, but is not limited to, misrepresenting that the Product is odorless and quick-drying, failing to disclose that the Product emits a strong, persistent and foul odor that renders the rooms in which it is used uninhabitable and that the Product does not dry completely even months after it is applied.

82.     Plaintiff places a high priority on environmental concerns in general, and on indoor air quality in particular.  In shopping for interior paint for her home, Plaintiff was particularly concerned about chemical emissions and odors.  Before selecting the Product to paint her home, Plaintiff conducted extensive research into environmentally friendly paints that have little to no impact on indoor air quality.  In conducting her research, Plaintiff learned from various sources – including Defendant's website – that the Product is odorless, quick-drying and a superior choice for those concerned about indoor air quality.

83.     In or about August 2009, Plaintiff visited Mann Brothers, a paint store near her home in Los Angeles, California, to further investigate environmentally friendly paints that have little to no impact on indoor air quality.  Plaintiff was provided with Defendant's standardized, uniform brochures representing the Product as being odorless, quick-drying and a superior

choice for those concerned about indoor air quality.  Plaintiff also reviewed the packaging for the Product that stated that the Product emits "Virtually No Odor" and "Breath Easy."

84.    After reviewing the packaging for the Product and Defendant's other advertising, Plaintiff purchased the Product in reliance on Defendant's representations that the Product was odorless, quick-drying and a superior choice for those concerned about indoor air quality. Plaintiff would not have purchased the Product at all, and certainly would not have paid such a high price for the Product, but for Defendant's false representations that the Product is odorless, quick-drying and a superior choice for those concerned about indoor air quality.  Had Plaintiff known that the Product emits a strong, foul and long lasting odor and that the Product does not dry completely even months after it is applied, Plaintiff would not have purchased the Product. Plaintiff has thus suffered injury in fact and lost money or property as a direct result of Defendant's misrepresentations and material omissions.

85.    By committing the acts alleged above, Defendant has engaged in fraudulent business acts and practices, which constitute unfair competition within the meaning of Business & Professions Code § 17200.

86.    An action for injunctive relief and restitution is specifically authorized under Business & Professions Code § 17203.

Wherefore, Plaintiff prays for judgment against Defendant, as set forth hereafter.

## SIXTH CAUSE OF ACTION
**(Plaintiff, On Behalf of Herself, the California Subclass, and the General Public, Alleges Violations of California Business & Professions Code § 17200, *et seq*. Based on Commission of Unlawful Acts)**

87.    Plaintiff realleges and incorporates herein by reference Paragraphs 1 through 87 of this Complaint.

88.     The violation of any law constitutes an unlawful business practice under Business & Professions Code § 17200.

89.     As detailed more fully in the preceding paragraphs, the acts and practices alleged herein were intended to or did result in the sale of the Product in violation of the CLRA, Cal. Civ. Code § 1750, *et seq*., and specifically California Civil Code Section 1770(a)(5), Section 1770(a)(7), and Section 1770(a)(9).

90.     Defendant's conduct also violates Section 5 of the Federal Trade Commission ("FTC") Act, 15 U.S.C. § 45, which prohibits unfair methods of competition and unfair or deceptive acts or practices in or effecting commerce.  By misrepresenting that the Product is odorless and quick-drying, and by failing to disclose that the Product emits a foul and long-lasting odor once applied and does not dry completely even months after it is applied, Defendant is violating Section 5 of the FTC Act.

91.     Defendant's conduct also violates California Business & Professions Code § 17500, which prohibits knowingly making, by means of any advertising device or otherwise, any untrue or misleading statement with the intent to sell a product or to induce the public to purchase a product.  By misrepresenting that the Product is odorless and quick-drying, and by failing to disclose that the Product emits a foul and long-lasting odor once applied and does not dry completely even months after it is applied, Defendant is violating Business & Professions Code § 17500.

92.     Defendant's conduct also violates California Business & Professions Code § 17580.5, which makes it unlawful for any person to make any untruthful, deceptive, or misleading environmental marketing claim.  By misrepresenting that the Product is odorless and quick-drying, by marketing the Product as a good choice for consumers concerned about indoor

air quality and by making the other green-washing claims described above, Defendant is violating Business & Professions Code § 17580.5.

93.     Defendant's conduct is also a breach of warranty.  Defendant's representations regarding the Product being odorless and quick-drying constitute affirmations of fact made with regard to the Product, as well as descriptions of the Product, that are part of the basis of the bargain between Defendant and purchasers of the Product.  Because those representations are false, Defendant has breached its express warranty as to the Product and has violated California Civil Code § 2313.

94.     By violating the CLRA, the FTC Act, Business & Professions Code §§ 17500 and 17580.5, California Civil Code § 2313 and the other consumer protection laws identified above, and by breaching its express warranty with its customers, Defendant has engaged in unlawful business acts and practices which constitute unfair competition within the meaning of Business & Professions Code § 17200.

95.     An action for injunctive relief and restitution is specifically authorized under Business & Professions Code § 17203.

96.     Plaintiff purchased the Product in reliance on Defendant's representations that the Product was odorless, quick-drying and a superior choice for those concerned about indoor air quality.  Plaintiff would not have purchased the Product at all, and certainly would not have paid such a high price for the Product, but for Defendant's false representations that the Product is odorless, quick-drying and a superior choice for those concerned about indoor air quality.  Had Plaintiff known that the Product emits a strong, foul and long lasting odor and that the Product does not dry completely even months after it is applied, Plaintiff would not have purchased the

Product.  Plaintiff has thus suffered injury in fact and lost money or property as a direct result of Defendant's misrepresentations and material omissions.

Wherefore, Plaintiff prays for judgment against Defendant, as set forth hereafter.

### SEVENTH CAUSE OF ACTION
**(Plaintiff, On Behalf of Herself, the California Subclass, and the General Public, Alleges Violations of California Business & Professions Code § 17200, *et seq*. Based on Unfair Acts and Practices)**

97.     Plaintiff realleges and incorporates herein by reference Paragraphs 1 through 97 of this Complaint.

98.     Under Business & Professions Code § 17200, any business act or practice that is unethical, oppressive, unscrupulous and/or substantially injurious to consumers, or that violates a legislatively declared policy, constitutes an unfair business act or practice.

99.     Defendant has engaged, and continues to engage, in conduct which is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to consumers.  This conduct includes, but is not limited to: (a) misrepresenting that the Product is odorless and quick-drying; (b) failing to disclose that the Product emits a foul and long-lasting odor once applied and does not dry completely even months after it is applied; and (c) failing to make any effort to notify consumers who have purchased the Product or retailers that are selling the Product of the Product's defective nature.  The gravity of harm caused by Defendant's conduct as described herein far outweighs the utility, if any, of such conduct.

100.     Defendant has engaged, and continues to engage, in conduct that violates the legislatively declared policy of the CLRA against misrepresenting the characteristics, uses, benefits and quality of goods for sale, the legislatively declared policy of the FTC Act against committing unfair methods of competition and unfair or deceptive acts or practices in or effecting commerce and the legislatively declared policy of Business & Professions Code §

17580.5 against making false or misleading advertising claims.  Defendant gains an unfair advantage over its competitors, whose advertising for products must comply with the CLRA, the FTC Act, and Business & Professions Code § 17580.5.

101.   Defendant's conduct is substantially injurious to consumers.  Such conduct has and continues to cause substantial injury to consumers because consumers would not have purchased the Product at all, or would not have paid such a high price for the Product, but for Defendant's false statements and material omissions about the Product.  Consumers have thus suffered injury, including but not limited to the price of the Product and the cost of addressing damage to their property caused by the Product.  Such injury is not outweighed by any countervailing benefits to consumers or competition.  Indeed, no benefit to consumers or competition results from Defendant's conduct.  Since consumers reasonably rely on Defendant's representations of the Product and injury results from ordinary use of the Product, consumers could not have reasonably avoided such injury.  *See Davis v. Ford Motor Credit Co.*, 179 Cal. App. 4th 581, 597-98 (Cal. Ct. App. 2009); *see also Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 257 (Cal. Ct. App. 2010) (outlining the third test based on the definition of "unfair" in Section 5 of the FTC Act).

102.   By committing the acts alleged above, Defendant has engaged in unfair business acts and practices which constitute unfair competition within the meaning of Business & Professions Code § 17200.

103.   An action for injunctive relief and restitution is specifically authorized under Business & Professions Code § 17203.

104.   Plaintiff purchased the Product in reliance on Defendant's representations that the Product was odorless, quick-drying and a superior choice for those concerned about indoor air

quality.  Plaintiff would not have purchased the Product at all, and certainly would not have paid

such a high price for the Product, but for Defendant's false representations that the Product is

odorless, quick-drying and a superior choice for those concerned about indoor air quality.  Had

Plaintiff known that the Product emits a strong, foul and long lasting odor and that the Product

does not dry completely even months after it is applied, Plaintiff would not have purchased the

Product.  Plaintiff has thus suffered injury in fact and lost money or property as a direct result of

Defendant's misrepresentations and material omissions.

Wherefore, Plaintiff prays for judgment against Defendant, as set forth hereafter.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment and relief against Defendant as

follows:

A.     That the Court declare this a class action;

B.     That the Court preliminarily and permanently enjoin Defendant from

conducting its business through the unlawful, unfair or fraudulent business acts or practices,

untrue and misleading advertising and other violations of law described in this Complaint;

C.     That the Court order Defendant to conduct a corrective advertising and

information campaign advising consumers that the Product does not have the characteristics,

uses, benefits and quality Defendant has claimed;

D.     That the Court order Defendant to implement whatever measures are

necessary to remedy the unlawful, unfair or fraudulent business acts or practices, untrue and

misleading advertising and other violations of law described in this Complaint;

E.     That the Court order Defendant to notify each and every individual and/or

business who purchased the Product of the pendency of the claims in this action in order to give

such individuals and businesses an opportunity to obtain restitution and damages from Defendant;

        F.      That the Court order Defendant to pay restitution to restore to all effected persons all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair or fraudulent business act or practice, untrue or misleading advertising, plus pre- and post-judgment interest thereon;

        G.      That the Court order Defendant to disgorge all monies wrongfully obtained and all revenues and profits derived by Defendant as a result of their acts or practices as alleged in this Complaint;

        H.      That the Court award damages to Plaintiff and the Class and California Subclass to compensate them for the conduct alleged in this Complaint;

        I.      That the Court grant Plaintiff her reasonable attorneys' fees and costs of suit pursuant to N.J.S.A. § 56:8-19, California Code of Civil Procedure § 1021.5, California Civil Code § 1780(d), the common fund doctrine and/or any other appropriate legal theory; and

        J.      That the Court grant such other and further relief as may be just and proper.

## JURY DEMAND

    Plaintiff demands a trial by jury on all causes of action so triable.

DATED:  April 25, 2011                     BECKWITH & WOLF, LLP

**/s/Carl Beckwith**             
Carl Beckwith (CB9044)
BECKWITH & WOLF, LLP
1 Closter Commons #181
Closter, NJ 07624
Telephone: (201) 338-2833
Facsimile: 201-839-4558
ccbeckwith@gmail.com


Eric S. Somers (*pro hac vice* forthcoming)
Howard Hirsch (*pro hac vice* forthcoming)
LEXINGTON LAW GROUP
1627 Irving Street
San Francisco, CA  94122
Telephone:  (415) 759-4111
Facsimile:  (415) 759-4112
esomers@lexlawgroup.com
hhirsch@lexlawgroup.com


Christopher M. Burke (*pro hac vice* forthcoming)
SCOTT+SCOTT LLP
707 Broadway, Suite 1000
San Diego, CA 92101
Telephone: (619) 233-4565
Facsimile: (619) 233-0508
cburke@scott-scott.com


Joseph P. Guglielmo(*pro hac vice* forthcoming)
Judith S. Scolnick (JS0829)
SCOTT+SCOTT LLP
500 Fifth Avenue, 40th Floor
New York, NY 10110
Telephone: 212-223-6444
Fax: (212) 223-6334
jguglielmo@scott-scott.com
jscolnick@scott-scott.om

*Attorneys for Plaintiff Marlene Sway*